UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MUFTI ABDUL EL-MALIK-BEY ALI,

    Plaintiff,

    v.                                                  CAUSE NO. 3:23-CV-879 DRL-SJF

DAVID LIEBEL *et al.*,

    Defendants.

## OPINION AND ORDER

Mufti Abdul El-Malik-Bey Ali, a prisoner at Miami Correctional Facility, sued David Liebel, William Croto, and Heather Wolfe for violating his religious rights under the First Amendment, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and Indiana's Religious Freedom Restoration Act (RFRA). He says the defendants didn't allow him to purchase and keep religious supplies, removed his Kosher diet program, confiscated his religious books, and retaliated against him. The defendants request summary judgment because they say Mr. Ali failed to exhaust his administrative remedies. The court grants the motion.

## BACKGROUND

Mr. Ali is a practicing Muslim who requested religious supplies and special dietary accommodations at Miami Correctional Facility [51-1 ¶ 16]. He has submitted many grievances during his time at Miami [51-3]; and here, he alleges that prison staff denied him the proper Halal and Kosher diets and deprived him of religious materials. Everyone agrees that there is no record of Mr. Ali successfully completing the proper Offender Grievance Process for these claims

against these defendants, but Mr. Ali disputes whether there were effective remedies for him to exhaust.

Miami has a grievance procedure and had one throughout the alleged events [51-1 ¶ 13]. It follows the standard Indiana Department of Correction (IDOC) policy because it is the only policy the IDOC recognizes for offender grievance resolution [*id.* ¶ 17-18; 51-2 at 3]. The policy has three steps: "(1) [a] formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions; (2) [a] written appeal to the Warden/designee; and, (3) [a] written appeal to the Department Grievance Manager" [51-2 at 3]. Offenders can use the process to raise issues including, but not limited to, policies, treatment, food, staff member actions, and reprisals for using the grievance process [*id.*]. Adequate grievances are assigned a grievance number in the system and should be investigated and responded to within 15 business days [51-1 ¶ 24]. Prisoners dissatisfied with the response to their grievances have the ability to appeal by checking the disagree box on the response and filing State Form 45473 [51-2 at 12-13]. If a prisoner doesn't receive a receipt of a grievance or a form indicating that the Grievance Specialist has rejected the grievance within ten business days, the prisoner "shall notify the Officer Grievance Specialist of the fact" [*id.* 9]. If a prisoner does not receive a response to a grievance within 20 business days, the policy allows the prisoner to "appeal as though the grievance had been denied" [*id.* 12].

## DISCUSSION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion

2

requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006)). The law takes a "strict compliance approach" to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Id.* at 1024. "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Inmates are only required to exhaust administrative remedies that are actually available. *Woodford*, 548 U.S. at 102. The availability of a remedy is not a matter of what appears on paper, but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. "An administrative remedy is 'unavailable' if it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, when the administrative scheme is so opaque that it

3

becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) (quotations omitted). Defendants bear the burden of showing that administrative remedies were available and the plaintiff failed to exhaust them. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). That burden remains with the defendants throughout; it never shifts to the plaintiff to show that administrative remedies were unavailable. *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022).

Mr. Ali says the grievance process at Miami is effectively a dead end. *Ross v. Blake*, 578 U.S. 632, 643 (2016). A grievance procedure may be a dead end if officers prove to be "unable or consistently unwilling to provide any relief to aggrieved inmates" or if "officials have apparent authority, but decline ever to exercise it." *Id.* He claims that even if he had followed the proper grievance procedure, he never would have received relief. He cites the heavy load of Miami's lone grievance specialist, Michael Gapski. Mr. Gapski receives between 400 and 700 grievances a month [57-5 Tr. 10, 23]. He operates with someone who helps out and a boss, but he is the only specialist [*id.* Tr. 10]. When Mr. Gapski receives a grievance, he does an investigation by pulling camera footage and taking statements [*id.* Tr. 14, 18]. He doesn't speak to the individuals who make the grievances [*id.* Tr. 30].

Mr. Ali says Mr. Gapski never looked into the settlement agreement that was the basis for his grievances and never spoke to Chaplain Croto or Officer Liebel about it. Mr. Ali zeroes in on what he describes as the inadequacy of this process—he faults Mr. Gapski for not acting on the "numerous ways to delve deeper into issues" including potentially "discussions with religious officials, a review of the commissary purchases itself, or even a discussion with [Mr. Ali] about

whether the items he allegedly purchased on commissary were even consumed by him" [57 at 13-14]. He notes that Mr. Gapski didn't even know the difference between Halal and Kosher diets [57-5 Tr. 68]. This, Mr. Ali argues, made the grievance process a dead end for him.

This focus on Mr. Gapski alone isn't sufficient; and, if Mr. Ali's complaints stopped there, this case might be over quickly. Mr. Gapski only performs the initial review of grievances, and the policy outlines a way to appeal his decisions if Mr. Ali disagreed with an investigation. A prisoner cannot simply opt out of step two and deem the process a dead end. *See Dole*, 438 F.3d at 808-809 ("Exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages, or if the prisoner believes that exhaustion is futile. The sole objective of [42 U.S.C.] § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins.") (citations and quotation marks omitted). The defendants point to multiple times that Mr. Ali received responses to his grievances [59-1 at 8, 28, 103, 119], so they show the process wasn't always a dead end, but that isn't the end of the inquiry. The defendants bear the burden to show that the grievance process was available to Mr. Ali each time. *Thomas*, 787 F.3d at 847.

The court allowed Mr. Ali to proceed based on specific dates. He must have exhausted or had the process made unavailable in each. First, he raises a claim against Director Liebel and Chaplain Croto for denying him religious items including Halal soap, toothpaste, oil, sticks, scarf, and a Thaub shirt on March 31, 2022. Neither side points to any grievance documenting this. Without any grievance at all in the record, either from Mr. Ali or the prison records, he hasn't even attempted to use the proper process. The purpose of a grievance is to alert prison officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709,

722 (7th Cir. 2011). Mr. Ali cannot choose not to provide prison officials with an opportunity to fix the problem and come straight to court. He didn't exhaust his remedies for the specific denial of religious items on March 31, 2022 in count 1. The court will grant summary judgment for the defendants on this claim.

The court also permitted Mr. Ali to proceed against Director Liebel, Chaplain Croto and Heather Wolfe for retaliation on March 3, 2020. There are no grievances in the record from 2020, and no grievances focused on retaliation near that time. Mr. Ali thus did not even try, on this record, to use the appropriate grievance process. He cannot argue that he tried to exhaust this claim, so the court will grant summary judgment for the defendants.

Mr. Ali next brings a claim against Director Liebel for removing him from the Kosher diet on September 13, 2023. He submitted a timely grievance (No. 23-160850) on September 18, 2023 [51-4 at 38]. The grievance names Director Liebel and outlines Mr. Ali's religious diet and retaliation complaints [*id.*]. Mr. Gapski received the grievance on October 5, 2023, and his response was due October 26, 2023 [*id.* 39]. The defendants included a response dated February 9, 2024 finding no violation because Mr. Ali had purchased non-Kosher or Halal foods from the commissary [*id.* 40].[1] Mr. Ali has no record of receiving a response [57-2 ¶ 87-88]. He submitted another grievance about his Kosher diet on September 20, 2023 (mistakenly dated 2022), and he says he never received a response to that grievance [*id.* ¶ 89; 59-1 at 117]. He followed up with an interview request on December 14, 2023 and another grievance regarding his meals on December 26, 2023 [59-1 at 122-23]. He says he didn't receive a response to either [57-2 ¶ 92-

---

[1] Notably, this response is well outside the 15 business days the grievance specialist has to investigate and respond under the policy [51-2 at 10]. The policy allows an offender to appeal the grievance as if it had been denied if there is no response within 20 business days [*id.* 12]. The document notes that it was mailed November 3, 2023, but that is internally inconsistent with the February 9, 2024 response date [51-4 at 40].

6

93]. If a prisoner hits "roadblock to further consideration" in the grievance process, then summary judgment isn't appropriate. *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016).

Mr. Ali may have tried to follow up, but he didn't follow the clear steps the policy outlines for what to do in the absence of a response. *Pozo*, 286 F.3d at 1025. Mr. Ali didn't take either step the process requires. First, he had "to notify the Offender Grievance Specialist" that he didn't receive a response to his grievance within ten business days [51-2 at 9]. He didn't on this record. Second, he didn't try to appeal the non-response after twenty business days [*id.* 12]. Mr. Ali cannot opt out of the procedures clearly outlined for him to follow and then claim that the process was unavailable to him. *Pozo*, 286 F.3d at 1025. He didn't follow the necessary procedure, so the court grants summary judgment for Director Liebel.

The court also permitted Mr. Ali to proceed on two claims against Ms. Wolfe for confiscating religious books. The defendants assert that prison records show Mr. Ali never attempted to file grievances against Ms. Wolfe during the relevant time period. Mr. Ali says that his grievances "vanish into the ether once he submits them," and the defense's argument ignores the fact that prison systems only have records of grievances that staff properly inputted. *See Knighten v. Mitcheff*, 2011 U.S. Dist. LEXIS 2910, 6-7 (S.D. Ind. Jan. 10, 2011). Mr. Ali concedes that IDOC records don't reflect any grievances, but he provides examples of two grievances he tried to file against Ms. Wolfe, one on April 31, 2023 for seizing his religious books [59-1 at 55] and another on July 6, 2023 again raising that Ms. Wolfe took his books [*id.* 91]. The defendants attack the timeliness of Mr. Ali's first grievance against Ms. Wolfe, although notably not whether he submitted it. Mr. Ali alleges that books he ordered were confiscated on March 31, 2023, and the defendants say his grievance regarding that is dated April 31, 2023, making it untimely,

7

because grievances must be filed within ten business days of the incident [*id.* 55; 51-2 at 9]. This particular grievance is untimely, so Mr. Ali can't claim that he properly exhausted. But Mr. Ali identified a second grievance against Ms. Wolfe for confiscating his possessions, this one timely [59-1 at 91 (dated July 6, 2023 reporting an incident on June 30, 2023)]. That grievance corresponds with ¶ 11 of the amended complaint [15 ¶ 11]. One untimely grievance doesn't doom his entire case, just the relevant claim.

But even recognizing that Mr. Ali submitted a second timely grievance, which he swears to in his affidavit, he still didn't exhaust his remedies [57-2 ¶ 57, 78]. He says he never received a response, but he also never followed the steps in light of that. The Offender Grievance Process gave Mr. Ali two options to address a missing response. First, the Offender Grievance Process required Mr. Ali "to notify the Offender Grievance Specialist" that he didn't receive a response to his July 6, 2023 grievance within ten business days [51-2 at 9]. Mr. Ali didn't follow up on the lack of response to his grievance for the June 30, 2023 incident with Ms. Wolfe, nor does he allege that he tried to comply with this notice requirement. He also didn't take the second option, which would have been to appeal the non-response after twenty business days [*id.* 12]. Because Mr. Ali didn't comply with proper procedure, he didn't exhaust his administrative remedies. The court thus must grant summary judgment for Ms. Wolfe on both claims.

## CONCLUSION

Accordingly, the court GRANTS the defendants' motion for summary judgment [51]. This order terminates this case for failure to exhaust.

SO ORDERED.

June 30, 2025                                            *s/ Damon R. Leichty*
                                                         Judge, United States District Court

8