UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MUFTI ABDUL EL-MALIK-BEY ALI,

Plaintiff,

v.

DAVID LIEBEL *et al.*,

Defendants.

CAUSE NO. 3:23cv879 DRL-SJF

## OPINION AND ORDER

The court granted summary judgment to defendants David Liebel, William Croto, and Heather Wolfe after finding that Mufti Abdul El-Malik-Bey Ali, a prisoner housed at Miami Correctional Facility (MCF), failed to exhaust his administrative remedies before filing suit. Mr. Ali moved to alter the judgment under Federal Rule of Civil Procedure 59(e).

## BACKGROUND

Just by way of introduction, because a more robust account of the case's background can be found in the court's prior order, *see Ali v. Liebel*, 2025 U.S. Dist. LEXIS 126012, 2-3 (N.D. Ind. June 30, 2025), Mr. Ali, a practicing Muslim, requested religious supplies and special dietary accommodations from the prison.

On January 17, 2024, he filed an amended complaint against David Liebel (Indiana Department of Correction Director of Religious Services), Heather Wolfe (an IDOC secretary), and William Croto (an IDOC chaplain).[1] He alleged that the defendants violated his religious

---

[1] Mr. Ali originally sued five defendants; after screening the amended complaint, claims survived against three.

rights as a practicing Muslim. For example, Mr. Ali said the defendants confiscated his religious literature and denied him meals, religious materials, and space necessary to exercise his religion.

On November 6, 2024, the defendants moved for summary judgment, arguing Mr. Ali failed to exhaust his administrative remedies before suing. Mr. Ali argued genuine issues of material fact existed as to whether the prison's grievance process was available.

After briefing, namely on June 30, 2025, the court granted summary judgment because Mr. Ali failed to exhaust his administrative remedies or follow IDOC procedures. Twenty-six days after entry of judgment, Mr. Ali filed a Rule 59(e) motion. He asks the court to alter its judgment dismissing the case and permit the issue of whether administrative remedies were available to proceed to a jury, citing *Perttu v. Richards*, 605 U.S. 460 (2025). The defendants opposed reconsideration. No reply came.

## STANDARD

A party may file a motion under Rule 59(e) to alter, amend, or vacate a judgment within 28 days of the entry of judgment. See Fed. R. Civ. P. 59(e); *Foman v. Davis*, 371 U.S. 178, 181 (1962). The rule "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quotation omitted). Still, a district court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (citation omitted). Accordingly, relief under Rule 59(e) is an extraordinary remedy reserved for the exceptional case. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). To prevail, the movant must clearly establish one of these

grounds for relief. *Id.* Reconsideration may only address "matters properly encompassed in a decision on the merits." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982). To this end, it doesn't offer "a vehicle for a party to undo its own procedural failures . . . [or to] introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quotation omitted). The motion is "tightly tied to the underlying judgment." *Banister*, 590 U.S. at 508.

DISCUSSION

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is "to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006)).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). The particular rules an inmate must properly exhaust are defined not by the PLRA, but by the specific prison's grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (inmates must file grievances "in the place, and at the time, the prison's administrative rules require."). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id.* at 1023. "Failure to exhaust is

an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Though an inmate must exhaust available remedies, he "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An "available" remedy is both "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Id.* And an available remedy can become unavailable if prison employees don't "respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. The defendant also bears the burden of proving that an administrative remedy was available. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Mr. Ali relies first on *Perttu v. Richards*, 605 U.S. 460 (2025), decided after the parties briefed the summary judgment motion but before the court ruled, to argue he is entitled to a jury trial on exhaustion.[2] In *Perttu*, the court held—"as a matter of statutory interpretation"—that a prisoner has a right to a jury trial on PLRA exhaustion "when that issue is intertwined with the merits" of a claim requiring a jury trial under the Seventh Amendment. *Id.* at 468. There, the inmate sued a corrections official "for violating his constitutional rights, including his First Amendment right to file grievances." *Id.* at 464. He alleged that he had "tried to file grievance forms" about the officer's alleged abuse but that the officer "destroyed them and threatened to kill him if he filed more." *Id.* The Supreme Court held that the Seventh Amendment guarantees a jury trial right on

---

[2] Though an intervening change in controlling law may support Rule 59(e) relief, *see Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998), the rule is "not properly utilized to advance arguments or theories that could and should have been made before the district court rendered a judgment," *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007) (quotation omitted). Mr. Ali's reliance on *Perttu* does just that: the Supreme Court's decision issued twelve days before judgment, leaving opportunity for him to file a notice of supplemental authority or seek leave to amend his briefing before the court ruled. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). That said, the court still addresses the argument, as it doesn't affect today's result, and respects the tight window he had to offer the case as supplemental authority.

4

exhaustion in such cases, as "both [the exhaustion and First Amendment claim] depend on whether [the officer] did in fact destroy [the prisoner's] grievances and retaliate against him." *Id.*

In *Perttu*, resolving exhaustion required resolving the same contested facts to decide the prisoner's retaliation claim. Here, by contrast, the exhaustion question doesn't turn on (and can be resolved without deciding) Mr. Ali's underlying religious discrimination and interference claims. His claims don't depend on whether prison staff obstructed his access to the grievance system. Mr. Ali says his lawsuit "sought redress of department-wide retaliation," but he alleges retaliation stemming from his settlement of a prior lawsuit, not retaliation in the form of destroying grievances or otherwise restricting his access to the grievance system. *See, e.g., Maas v. Labby*, 2025 U.S. Dist. LEXIS 252603, 3-4 (E.D. Wis. Dec. 8, 2025) (Duffin, M.J.) ("The question of whether [the plaintiff] properly exhausted his administrative remedies is not dependent on resolving the issue of whether the defendants were deliberately indifferent to [the plaintiff's] serious medical needs."). Accordingly, *Perttu* isn't an intervening change in controlling law warranting reconsideration, nor does it direct a different result.

Mr. Ali thus argues that the court's exhaustion ruling rested on manifest errors. But he does not identify—by count, claim, defendant, or discrete holding—what portion of the summary judgment order he believes was erroneous. Instead, he offers a general theme: that the grievance process was "unavailable" either because he attempted to file grievances or received delayed responses.[3]

---

[3] Mr. Ali also argues that prison officials were on notice of his claims generally because he repeatedly attempted to "seek redress for the same overarching issues." But general awareness isn't enough. Summary judgment is warranted when an offender "presented none of [the complaint's] allegations to the jail through the grievance process, and federal courts lack discretion to consider a claim that has not traveled the required administrative path." *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021).

Mr. Ali cites evidence presented at summary judgment that, in his view, shows that he attempted to grieve issues and that MCF failed to respond in a timely way. This does not raise a valid basis for reconsideration because Mr. Ali raised, or could have raised, this argument in his response to the summary judgment motion. *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments"); *King v. Ford Motor Co.*, 872 F.3d 833, 838-39 (7th Cir. 2017) (arguments which "could have been submitted along with [the] response to the motion for summary judgment [are] not properly presented for the first time in a motion for reconsideration"). Regardless, the evidence to which Mr. Ali cites, even when viewed in the light most favorable to him, doesn't establish the unavailability of the grievance process because the grievance policy sets out specific steps an offender must take when a response isn't received, and the undisputed evidence shows Mr. Ali didn't take them. The policy provides that

> If an offender does not receive either a receipt or a rejected form from the Offender Grievance Specialist within ten (10) business days of submitting it, the offender shall notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days.

[51-2 at 9]. The policy further states that, if the offender doesn't receive a response within 20 business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal to the Warden or her designee as if the grievance was denied [*id.* 12]. Next, if the offender still isn't satisfied—or doesn't receive a response within the time allowed—the offender may appeal to the Department Offender Grievance Manager [*id.* 13]. The decision of the Department Offender Grievance Manager is final, and exhaustion of the grievance procedure requires filing an appeal to the Department Offender Grievance Manager [*id.*; 51-1 ¶ 29-30].

This framework matters because exhaustion requires compliance with the prison's administrative rules, "including the level of detail required by them." *Shipp v. Lobenstein*, 2023 U.S. App. LEXIS 34047, 4 (7th Cir. Dec. 22, 2023) (citing *Jones v. Block*, 549 U.S. 199, 218 (2007)). The law takes a strict approach: "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see Smallwood v. Williams*, 59 F.4th 306, 313 (7th Cir. 2023). And when the applicable exhaustion rules require an appeal, the prisoner must do so—"whether or not the prison responds to a grievance, the inmate must appeal within the hierarchy"—else the claim remains unexhausted. *Ingram v. Watson*, 67 F.4th 866, 869 (7th Cir. 2023); *see Pozo*, 285 F.3d at 1025 (offender failed to exhaust when he filed a timely and sufficient complaint but not a timely appeal).

The undisputed evidence shows Mr. Ali didn't follow the grievance policy before filing suit. He attests that he submitted two grievances against Ms. Wolfe to which the prison never responded [57-2 ¶ 57, 78], but he never followed up in the manner the policy requires or appealed as if the grievances had been denied. The same is true of his September 18, 2023 grievance concerning his removal from the kosher diet on September 13, 2023. The undisputed evidence shows he didn't follow up or pursue an appeal [*id.* ¶ 87-89]. Nor does the record show Mr. Ali filed a grievance corresponding to the allegation in count 1 that he was denied permission to access certain religious items.

Though Mr. Ali cites various grievances or attempted grievances complaining of retaliation [51-4 at 4-7; 59-1 at 32, 33-40, 42, 68-69, 94-100], none of the cited documents corresponds to the retaliation timeframe on which he was permitted to proceed (retaliation since

March 3, 2020).[4] He doesn't show that he appealed or attempted to appeal those grievances. Indeed, on two occasions, Mr. Ali admits he didn't file an appeal, explaining he could not "locate [a] record of receiving that response, but if [he] had [he] would have requested an appeal" [57-1 ¶ 66, 80]. That statement proves the point that, where the policy provides a path forward, Mr. Ali's failure to take that required step was noncompliance with an available remedy, not a basis to deem the process unavailable. *See Ingram*, 67 F.4th at 869. Accordingly, because the undisputed evidence demonstrates Mr. Ali didn't properly exhaust before filing suit, he hasn't demonstrated any manifest error of law or fact, and reconsideration isn't warranted.

CONCLUSION

Accordingly, the court DENIES the motion to reconsider [69].

SO ORDERED.

March 10, 2026                          *s/ Damon R. Leichty*
                                        Judge, United States District Court

---

[4] Mr. Ali correctly points out in his reconsideration motion that the court's previous order said the screening order permitted him to proceed with a discrete claim of retaliation occurring *on* March 3, 2020, when in fact the screening order permitted a claim of ongoing retaliation *since* that date. With appreciation to Mr. Ali for pointing out this correction, which the court will make here in amending the prior opinion, it nonetheless turns out to be a distinction without a difference in result.